IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JULIUS R. ELLIS, CARRIE M. )
FORRIS, ESQ., GEORGE L. )
STRATON, ESQ., and STRATON & )
FORIS, LTD., an Illinois )
Professional corporation, )
individually and on behalf of )
classes of similarly situated )
persons, )
)
)
Plaintiffs, )
) No. 06 C 4571
v. )
)
ALLSTATE INSURANCE COMPANY, an )
Illinois corporation, and STATE )
FARM MUTUAL AUTO INSURANCE )
COMPANY, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Julius R. Ellis, Carrie M. Foris, Esq., George L. Straton, Esq. and Straton & Foris, Ltd. have filed a complaint, individually and on behalf of two classes of similarly situated persons, against defendants Allstate Insurance Company ("Allstate") and State Farm Mutual Auto Insurance Company ("State Farm"). The complaint asserts a total of nine counts against Allstate (Counts I-IX) and two counts against State Farm (Counts VIII-IX). Defendants have each moved to dismiss the complaint or, alternatively, to strike the class allegations. For the reasons stated herein, I grant defendants' motions to dismiss.

I.

Ellis, an Allstate policy holder, was injured in an automobile accident in May of 2002 in Cook County, Illinois. (Compl. at ¶ 13.) The other driver, Anne G. Passman, was insured by State Farm. (Id. at ¶ 18.) Ellis' insurance policy provided him with medical payments coverage and Allstate with a right of subrogation[1] for medical payments made to Ellis. (Id. at ¶¶ 17, 19.)[2] On or about April 5, 2003, Ellis engaged Straton & Foris to represent his personal injury claims against Passman and his first party claims for medical payments against Allstate. (Id. at ¶ 14.)

Straton & Foris notified Allstate and State Farm of its representation of Ellis in connection with Ellis' claims arising from the May 2002 accident by letters dated April 10, 2003. (Id. at ¶¶ 21-22; Exh. B and C.) Although addressed to the different insurers, the text of both letters is identical and provides:

> Please be advised that this office has been retained to represent Mr. Julius Ellis in his claim for medical payments benefits for treatment he received for personal injuries he sustained as a result of a certain automobile collision that occurred on or about May 31, 2002. As Mr.

---

[1] *Couch on Insurance* defines subrogation as "the insurer's right to proceed against a third party responsible for a loss which the insurer has compensated pursuant to its contractual obligation under a policy, and which depends, inter alia, on the existence of the insured's right to proceed against that entity." 16 Couch on Ins. § 222:2 (2006).

[2] Paragraph 17 of the complaint expressly incorporates Ellis' Allstate policy into the complaint, but fails to actually attach the policy. A copy of the policy was provided in Allstate's motion to dismiss.

2

>  Ellis' attorneys, we maintain an attorney's lien against all proceeds of his claim. Kindly acknowledge our representation of Mr. Ellis in this matter as well as our lien.

(Id. at Exh. B & C.)

Allstate responded by letter dated April 16, 2003, stating in relevant part:

> This applicable policy of insurance provides Allstate Insurance Company with a medical payment subrogation lien. Allstate Insurance Company has made or may be called upon to make medical payments pursuant to this policy and notifies you that it will represent its own subrogation interests as to any medical payments advanced or to be advanced. Accordingly, Allstate Insurance Company neither seeks your services to represent its interest with respect to medical payments nor will it recognize any right, claim entitlement, or lien, equitable or otherwise, upon the subrogation amount for services given.

(Id. at ¶ 23; Exh. D.) Straton & Foris alleges it replied by letter dated April 17, 2003, asserting that Allstate's April 16 letter was "not sufficient to overcome [Straton & Foris'] right to compensation under the [common] fund doctrine. If Allstate wishes to avoid compensating this office under the fund doctrine, it must either waive its subrogation lien on the proceeds of Mr. Ellis' claim, or actively participate in the litigation of this matter." (Id. at ¶ 24; Exh. E.)

At some point after Allstate received the April 17, 2003 letter, it initiated proceedings against State Farm to recover subrogation on the Ellis claim through Inter-Company Arbitration

("ICA"). (Id. at ¶ 27.) The complaint alleges both insurers agreed to stay ICA proceedings pending the outcome of Ellis's claim. (Id. at ¶ 30.)

Ellis filed suit against Passman in the Circuit Court of Cook County in May of 2004 (id. at ¶ 35; Exh. F) and obtained a judgment in the amount of $9,850 plus costs, totaling $10,298.40. (Id. at ¶¶ 35, 44.) Plaintiffs also allege that while the circuit court suit was pending, Straton & Foris and then Foris were repeatedly advised by Allstate that it would not compensate Straton & Foris under the common fund doctrine. (Id. at ¶ 38.) During the same time period, State Farm continued to insist that it was obligated to honor Allstate's claim as a "lien" against Ellis' claim. (Id. at ¶ 39.) State Farm ultimately paid the judgment and issued a check in the amount of $4,106.06 naming Allstate as a payee in recognition of Allstate's subrogation claim. (Id. at ¶ 47; Exh. H.) Foris sent the $4,106.06 check to Allstate along with correspondence threatening to bring suit unless Allstate waived all of its subrogation interests and made additional payments to plaintiffs totaling $1 million. (Id. at ¶ 48; Exh. I.) Allstate rejected the $1 million demand, but determined that it had previously agreed to pay a one-third attorneys' fee and pro rata share of costs under the common fund doctrine in September of 2005. (Id. at ¶ 48; Exh. K.) Allstate further waived its subrogation

4

interests entirely and endorsed and tendered the $4,106.06 check to plaintiffs. (Id. at ¶ 48) Plaintiffs have not cashed that check. (Id.)

The complaint alleges nine counts against Allstate and two against State Farm. In addition to the individual plaintiffs the complaint identifies two separate classes of plaintiffs. Class A consist of "Allstate and/or State Farm first party insured and[/]or third-party claimants damaged as a proximate result of defendants' misconduct that is substantially similar to that which is alleged to have proximately caused Ellis to sustain damage[s]." (Id. at p. 13, ¶ 55.) Class B consist of "Allstate and/or State Farm insureds and/or third-party claimants' attorneys damaged as a proximate result of defendants' misconduct that is substantially similar to that which is alleged to have proximately caused Straton & Foris, Straton and Foris to sustain damage[s]." (Id. at p. 13 ¶ 59.)

Ellis and Class A's claims against Allstate allege a violation of a the Illinois Insurance Code (Count I); common law fraud (Count II); a violation of the Illinois Consumer Fraud Act (Count III); and unjust enrichment (Count VI). Straton & Foris and Class B allege common law fraud (Counts IV & V); and unjust enrichment (Count VII) claims against Allstate. Count VIII is brought on behalf of all plaintiffs against Allstate and State Farm for civil conspiracy. Count IX alleges a violation of RICO.

II.

In assessing defendants' Rule 12(b)(6) motions to dismiss, I must accept all well-pleaded facts in the complaint as true. *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005). Documents attached to the complaint are considered part of the complaint. *Id.* (citing FED. R. CIV. P. 10(c)). I must view the allegations in the light most favorable to plaintiffs. *Id.* Dismissal under Rule 12(b)(6) is proper if the plaintiffs can prove no set of facts to support their claims. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002).

A. Counts VI and VII: Unjust Enrichment

Underlying all of plaintiffs' claims are the allegations that Allstate breached its duty under the common fund doctrine. common fund doctrine "is one of equity and provides that an attorney who performs services in creating a fund should in good conscience be entitled to compensation out of the whole fund from those who seek to benefit from the creation of the fund." *Taylor v. Am. Family Ins. Group*, 311 Ill. App. 3d 1034, 1038, 725 N.E.2d 816, 819-20 (Ill. App. Ct. 2000). This is an unjust enrichment claim. *See id.* (citing *Country Mut. Ins. Co. v. Birner*, 293 Ill. App. 3d 452, 456, 688 N.E.2d 859, 862 (1997)); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-94 (1970). In order to state such a claim, the plaintiff must allege: "(1) that the fund was created as the result

of legal services performed by the attorney, (2) that the subrogee did not participate in the creation of the fund, and (3) that the subrogee benefitted out of the fund that was created." *Taylor*, 311 Ill. App. 3d at 1038, 725 N.E.2d at 820.

Defendants first argue the unjust enrichment claims have been mooted, for the complaint itself provides Allstate has waived its subrogation rights and endorsed and tendered plaintiffs the check for $4,106.06. (Compl. at ¶ 48; Exh. H; Exh. K.) This constituted "the entirety of any amount that Allstate could have claimed under its subrogation rights." (Id. at Exh. K, p.2.) Plaintiffs do not dispute this, but continue to argue that they suffered both direct and collateral damages as a result of defendants' alleged misconduct, all which are recoverable under the common fund doctrine. As identified by plaintiffs, the damages caused by defendants alleged misconduct are as follows:

> [To Ellis:]
> a) it has deprived Ellis of reimbursement of [the] costs of prosecuting Ellis's claims to which Ellis is entitled under the *Common Fund Doctrine*;
> b) it has reduced the "net" recovery due Ellis from settlement of his claims or in satisfaction of judgment in his favor in the suit;
> c) it has resulted in unnecessary delay in the final resolution of his claims;
> d) it has cost him the time value of settlement proceed[sic] which he would have recovered earlier in the adjustment of his claim;
> [To Straton, Foris and Straton & Foris:]
> a) it has deprived them of fees they are due under the *Common Fund Doctrine*;

> b) it has diminished the time value of those contingent fees that they have collected in the Ellis engagement by prolonging the time required to recover on Ellis's claim[.]

(Compl. at ¶¶ 49-50) (emphasis in original).

Damages in unjust enrichment cases are measured by the defendant's gains, not plaintiff's losses. *See Raintree Homes, Inc. v. Vill. of Long Grove*, 209 Ill. 2d 248, 257-58, 807 N.E.2d 439, 444-45 (2004) (citations omitted); *see also* 1 Dan D. Dobbs, Law of Remedies §1.1, 5 (2d ed. 1993). In this case, plaintiffs do not dispute, and the complaint plainly states, that Allstate has tendered the full amount recovered for Ellis' claim. Accordingly, there is no enrichment by Allstate to disgorge. If there is no inequity or controversy to resolve, the prerequisites for federal court adjudication are not fulfilled. *See Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006) (an actual controversy must exist at all stages of federal court proceedings). Plaintiffs' claim for the "costs of prosecuting Ellis' claims" and attorneys fees due under the common fund doctrine (identified under subsection (a) in paragraphs 49 and 50 of the complaint) are moot.

Plaintiffs argue they have nevertheless also suffered the remaining collateral damages identified in subsections (b)-(c) in paragraphs 49 and 50 of the complaint, which are recoverable under

the common fund doctrine.[3] In support, they cite *Brase v. Loempker*, 267 Ill. App. 3d 415, 642 N.E.2d 202 (Ill. App. Ct. 1994), and *McGee v. Oldham*, 267 Ill. App. 3d 396, 642 N.E.2d 196 (Ill. App. Ct. 1994). Upon examination, neither case stands for such a proposition. Both *Brase* and *McGee* examine circumstances in which the common fund doctrine can be invoked, not a determination of damages. *Brase*, 267 Ill. App. 3d at 421, 642 N.E.2d at 206 (court simply awards one-third of the fund for attorney's fees plus a pro rata amount of expenses); *McGee*, 267 Ill. App. 3d at 401, 642 N.E.2d at 200 (silent on the determination of damages). In fact, any recovery under the common fund doctrine is capped by the value of the fund. Central to any unjust enrichment claim is the value of the enrichment. *See Raintree Homes*, 209 Ill. 2d at 257-58, 807 N.E.2d at 444-45. Under the doctrine, plaintiffs are simply not entitled to damages exceeding the amount of the fund. *See Taylor*, 311 Ill. App. 3d at 1038, 725 N.E.2d at 820 (defendant must benefit from "the fund that was created"). The value of the fund, in this case the judgment obtained by plaintiffs for Ellis' medical payments, was $4,106.06. This is precisely what the complaint states Allstate has tendered to plaintiffs. Accordingly, the additional damages listed in the complaint are not recoverable

---

[3] Plaintiffs do not argue their case falls under the mootness doctrine's exceptions for wrongs capable of repetition yet evading review or voluntary cessation.

9

under the common fund doctrine. Plaintiffs' unjust enrichment claims under Counts VI and VII are dismissed.

B.  Count I: Violation of Illinois Insurance Code

Plaintiffs Ellis and Class A seek damages under section 155 of the Illinois Insurance Code, codified as 215 ILCS 5/155 ("Section 155"), which provides:

> In any action by or against a company wherein there is in issue the liability of a company on a policy . . . of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $60,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILCS 5/155(1). This provision allows an insured to recover attorneys' fees, other costs and sanctions where an insurer has unreasonably delayed in settling a claim and where that delay is "vexatious and unreasonable." *Id.* The Seventh Circuit has held that an insurer's conduct is vexatious and unreasonable when "the evidence shows that the insurer's behavior was willful and without

reasonable cause." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (internal citation omitted).

Plaintiffs concede Allstate "[made] payment to Ellis of medical benefits under Allstate's policy." (Comp. at p. 14 ¶ 51; Exh. G.) It does not allege those payments were withheld or delayed in any way, much less that any delay was vexatious or unreasonable. Plaintiffs' allegations only concern Allstate's "subsequent refusal to comply with the Common Fund Doctrine with respect to its subrogation claim." (Id.) This is not actionable under section 155, which is a statutory remedy available to "an insured or his assignee 'who encounters unnecessary difficulties when an insurer withholds policy benefits.'" *Peerless Enter., Inc. v. Kruse*, 317 Ill. App. 3d 133, 144, 738 N.E.2d 988, 999 (Ill. App. Ct. 2000) (quoting *Richardson v. Illinois Power Co.*, 217 Ill. App. 3d 708, 711, 577 N.E.2d 823 (Ill. App. Ct. 1991)); *see also* 22A Ill. Law and Prac. Insurance § 489. In light of the fact that Ellis' policy does not list compliance with the common fund doctrine as a "benefit," and Allstate never failed to pay medical benefits under the policy, plaintiffs have failed state a claim under section 155. Count I is dismissed.

### C. Counts II-IV: Fraud

Counts II and IV claim common law fraud on behalf of Ellis, Straton & Foris, and both classes. Count III claims a violation of

the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* on behalf of Ellis and Class A. Under Federal Rule of Civil Procedure 9(b), fraud must be pled with particularity. FED. R. CIV. P. 9(b). The plaintiff must plead with specificity the who, what, where, and when of the alleged fraud or mistake. *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins.*, 412 F.3d 745, 749 (7th Cir. 2005).

To plead common law fraud in Illinois, a plaintiff must allege "(1) a false statement of material fact, (2) known or believed to be false by the party making it, (3) intent to induce the other party to act, (4) action by the other party in reliance on the truth of the statement, and (5) damage to the other party resulting from such reliance." *Soules v. Gen. Motors Corp.*, 79 Ill. 2d 282, 286, 402 N.E.2d 599, 601 (1980) (citations omitted); *Addison v. Distinctive Homes, Ltd.*, 359 Ill. App. 3d 997, 1000, 836 N.E.2d 88, 92 (Ill. App. Ct. 2005).

Defendants argue the complaint does not allege a false statement of material fact. Counts II-IV allege Allstate misrepresented to plaintiffs its "intention to ta[k]e such action as was necessary to recover on its subrogation claim, including [] actively arbitrating its claim in ICA; [and] its intention to abide by the Common Fund Doctrine." (Compl. at pp. 15, 16-17, 18, ¶¶ 51.) The complaint alleges these misrepresentations were material

because plaintiffs "decided what amounts would be acceptable in settlement of their third party injury claims and/or whether it was necessary to file suit to recover on their third party injury claims." (Id. at pp. 15-16, 17, 18 ¶¶ 52.)

In Illinois, a false representation as to a matter of intention or future conduct is not fraud. *Hayes v. Dique*, 401 Ill. 479, 488, 82 N.E.2d 350, 355 (1948); *Chatham Surgicore, Ltd. v. Health Care Serv. Corp.*, 356 Ill. App. 3d 795, 804-05, 826 N.E.2d 970, 977-78 (Ill. App. Ct. 2005). An exception exists when "the false promise of future performance is part of a scheme or device to defraud." *Chatham*, 356 Ill. App. 3d at 804, 826 N.E.2d at 977 (quotations omitted). Allegations of such a scheme "cannot be inferred or implied from [the] complaint . . . they must be pled with specificity." 356 Ill. App. 3d at 805, 826 N.E.2d at 979 (emphasis omitted); *see also* FED. R. CIV. P. 9(b).

Plaintiffs' allegations are insufficient to state a claim for fraud. On the face of the complaint, plaintiffs' fraud claims rest on statements of intention, which are not actionable in Illinois unless they are part of a scheme to defraud. No scheme is alleged here with particularity. The complaint provides that Allstate paid Ellis his medical payments and, consistent with the terms of the policy, maintained it would enforce its own subrogation rights. Plaintiffs concede they "do not take issue with Allstate's right to protect its own subrogation interest to the exclusion of the

13

[l]awyer [p]laintiffs." (Pl. Resp. at 8.) Moreover, plaintiffs correspondence with Allstate, in which Allstate declines Straton & Foris' services, contains no statements concerning the ICA. In fact, nowhere in the complaint do plaintiffs identify specific statements made by Allstate concerning the nature of the ICA proceedings.[4] None of the correspondence identified in the complaint induces or encourages plaintiffs to pursue recovery of Allstate's subrogation rights. Accordingly, Counts II and IV, for common law fraud, are dismissed.

Plaintiffs' claim for consumer fraud in Count III must also be dismissed for failure to plead with particularity. To plead a private cause of action for a deceptive act or practice in violation of the Consumer Fraud Act, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; (4) actual damage to the plaintiff; (5) that the actual damage was proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149, 776 N.E.2d 151, 160 (2002). "A complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under

---

[4] In Exhibit J of the complaint, counsel for Allstate comment on the allegations concerning the nature of the ICA proceeding in response to plaintiffs letter and draft complaint. (Compl. at Exh. J, p. 2.)

common law fraud." *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 799, 844 N.E.2d 995, 998 (Ill. App. Ct. 2006) (citing *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1997)); FED. R. CIV. P. 9(b). For the same reasons described in dismissing Counts II-IV for want of particularity, Count III is also dismissed.

    D.   Counts VIII and IX: Civil Conspiracy and RICO

Defendants argue plaintiffs fail to allege an "unlawful purpose" in order to state a claim for a civil conspiracy in Count VIII. In order to state a claim for civil conspiracy under Illinois law, plaintiffs must allege "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or an lawful purpose by unlawful means. *Buckner v. Atl. Plant Maint., Inc.*, 182 Ill. 2d 12, 23-24, 694 N.E.2d 565, 571 (1998). Plaintiffs must allege not only that one of the conspirators committed an overt act in furtherance of the conspiracy, but also that such act was tortious or unlawful in character. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 63, 645 N.E.2d 888, 894 (1994) (citations omitted).

As identified by the complaint, the unlawful purpose of the alleged conspiracy between Allstate and State Farm was to "deprive plaintiffs . . . of their rights and benefits under the Common Fund Doctrine." (Compl. at p. 22 ¶ 51.) In furtherance, it is alleged

15

that defendants conducted "a sham ICA proceeding" and designated Allstate as a payee on the check issued by State Farm to satisfy the judgment in the circuit court action. (Id.) As already described, plaintiffs fail to state a claim for fraud or unjust enrichment. In the absence of a valid fraud claim, plaintiffs cannot establish that the "sham ICA proceeding" was tortious or unlawful. In fact, Illinois law recognizes only two causes of action that can arise from the allegedly wrongful filing of a lawsuit: malicious prosecution and abuse of process. Neither is alleged here. Furthermore, Ellis's policy, which is incorporated into the complaint, provides that Allstate had valid subrogation rights for the medical payments made to Ellis. State Farm's recognition of Allstate's subrogation rights, by naming Allstate as a payee on a check, does not qualify as tortious or unlawful. Accordingly, Count VIII is dismissed.

Finally, defendants move to dismiss Count IX on grounds that plaintiffs fail to allege "an enterprise" under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964 (1982). In order to state a claim under § 1962(d) a plaintiff must allege the defendants (1) "agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) . . . further agreed that someone would commit at least two predicate acts to accomplish those goals." *Slaney v. The Intern. Amateur*

*Athletic Fed'n*, 244 F.3d 580, 600 (7th Cir. 2001). A RICO complaint must "identify the enterprise." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995). An "enterprise" under RICO includes "any individual, partnership, corporation, association, or other legal entity, and any union of group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It must have "an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) (quoting *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990)). "[A] RICO enterprise is more than a group of people who get together to commit a 'pattern of racketeering activity.'" *Id.* (quoting *Richmond*, 52 F.3d at 645). It must have "a structure and goals separate from the predicate acts themselves." *Id.* (quoting *United States v. Masters*, 924 F.3d 1362, 1367 (7th Cir. 1991)).

According to plaintiffs, the enterprise consists of "Allstate and State Farm . . . act[ing] in concert and with scienter and malice to deprive plaintiffs . . . of their rights and benefits under the Common Fund Doctrine." (Compl. at ¶ 51.) This allegation is not sufficient. Plaintiffs fail to identify any organizational structure or hierarchy among Allstate and State Farm, or any of their goals aside from the alleged predicate acts

themselves. See Stachon, 229 F.3d at 676 (citing Jennings, 910 F.2d at 1440) ("RICO plaintiffs cannot establish structure by defining the enterprise through what it supposedly does."). Accordingly, Count IX is dismissed.

### III.

For the reasons stated herein, defendants' motions to dismiss are granted. Defendants' additional motions to strike the class allegations are denied as moot.

ENTER ORDER:

*Elaine L Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: December 5, 2006